UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHANIE S. SULLIVAN,

    Plaintiff,

v.                         Case No. 8:19-cv-1889-T-33CPT

PNC BANK, N.A.,
ABSOLUTE RECOVERY SERVICES, INC.,
JOHN DOE CORPORATION, and
JOHN DOE's 1 and 2,

    Defendants.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant PNC Bank's Motion to Compel Arbitration and to Stay Claims Pending Arbitration (Doc. # 19), filed on August 22, 2019. Plaintiff Stephanie S. Sullivan responded in opposition on August 29, 2019. (Doc. # 20). PNC Bank replied on September 9, 2019. (Doc. # 25). For the reasons that follow, the Motion is denied.

**I.  Background**

On August 19, 2014, Sullivan entered into a finance agreement to purchase a used 2012 Hyundai automobile from Hyundai of Bradenton. (Doc. # 1-2 at 4). The finance agreement was later assigned to PNC. (Id. at 2, 5; Doc. # 19 at 2).

Sullivan eventually fell behind on her payments to PNC and the car was repossessed. (Doc. # 1-2 at 5).

Sullivan then initiated this action in state court on June 26, 2019, bringing claims arising from that repossession. (Id. at 1). Specifically, the Complaint asserts claims for violations of the Uniform Commercial Code, the Fair Debt Collection Practices Act, the Florida Consumer Collection Practices Act, and 42 U.S.C. § 1983, as well as for trespass to chattels, negligence, battery, and assault. (Id. at 7-16). PNC removed the case to this Court on the basis of federal question jurisdiction on August 1, 2019. (Doc. # 3).

PNC now seeks to compel arbitration based on an arbitration provision in the finance agreement and to stay all claims pending arbitration. (Doc. # 19). Defendant Absolute Recovery Services, Inc. adopted and joined in PNC's Motion on September 5, 2019. (Doc. # 22). Sullivan has responded to the Motion (Doc. # 20), and PNC has replied. (Doc. # 25). The Motion is ripe for review.

## II.  Discussion

In determining whether to refer a matter to arbitration, a court must conduct a two-step inquiry. Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the

court must determine whether the parties agreed to arbitrate. Id. Second, the court must decide whether any "legal constraints external to the parties' agreement foreclosed arbitration." Id. Only the first step is relevant here.

PNC argues that the case must be arbitrated pursuant to the terms of the finance agreement. (Doc. # 19). The finance agreement, a two-page document, includes an arbitration provision at the bottom of the second page.  The arbitration provision provides in relevant part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the Interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or nay resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action.

(Doc. # 1-2 at 23). There is no signature line beneath the arbitration provision. (Id.). But on the first page of the finance agreement, there is a separate "agreement to arbitrate" provision with a signature line below it. (Id. at 21). This separate provision provides in pertinent part:

> **Agreement to Arbitrate.** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect

> to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

(Id.).

Sullivan argues she did not agree to arbitrate her claims because she never signed the agreement to arbitrate provision. (Doc. # 20 at 4). This Court agrees. PNC's arguments in favor of compelling arbitration are unavailing.

First, PNC argues that, under Eleventh Circuit precedent, Sullivan agreed to arbitrate the claims in dispute. (Doc. # 19 at 6). PNC stresses the Eleventh Circuit's holding that, under the Federal Arbitration Act (FAA), an agreement to arbitrate is only required to be "written;" it is not required to be signed by either party. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1369 (11th Cir. 2005). According to PNC, Caley means that, even though there was no signature under the agreement to arbitrate provision here, the arbitration provision is still binding. (Doc. # 19 at 6). PNC misinterprets Caley.

The Eleventh Circuit's observation that a valid arbitration agreement can be created without either party signing it does not compel the conclusion that the arbitration provision here is binding. The facts of the Caley case bear

4

this out. The arbitration provision drafted by the defendant employer in Caley did not have a signature line for employees to sign. Rather, the arbitration provision "expressly provide[d] that continued employment [was] the proper means of acceptance" of that provision. 428 F.3d at 1374. Thus, the fact that the plaintiff employee did not sign the arbitration provision was irrelevant — he had already agreed to the arbitration provision by continuing his employment. Id. In short, Caley stands for the proposition that an arbitration provision can define a means of acceptance other than a signature and still be valid.

Unlike Caley, the contract here explicitly stated that Sullivan would agree to arbitrate "[b]y signing" the provided signature line in the agreement to arbitrate provision. (Doc. # 1-2 at 21). Thus, the contract defined the means of acceptance of the arbitration provision: Sullivan's signature on the signature line in the agreement to arbitrate provision. The fact that the finance agreement could have been drafted differently — for example, there could have been an arbitration provision that did not request a signature — does not mean that the agreement to arbitrate provision, as actually drafted, did not need to be signed by Sullivan to be

binding. Therefore, Caley does not compel arbitration in this case.

Second, PNC argues that a recent unpublished, non-binding decision from the Eastern District of New York supports its argument that the unsigned arbitration provision is binding. Lovelace v. Showroom Auto, LLC, 16-CV-4978 (ERK) (CLP), 2017 U.S. Dist. LEXIS 154595, *14-16 (E.D.N.Y. Sept. 18, 2017). In Lovelace, the court held that, even though the signature line beneath the arbitration provision was not signed, the arbitration provision was still binding because the plaintiff had signed the bottom of the contract. Id. Although the contract in Lovelace is similar to the one in this case, the Court is unpersuaded by Lovelace's reasoning. Importantly, in Lovelace, the plaintiff failed to raise the argument that the arbitration provision was not binding because it was unsigned. Id. at *14. Thus, the Lovelace court's discussion of the issue is pure dicta unaided by the parties' briefing. Here, unlike Lovelace, Sullivan actually — and persuasively — argues that the arbitration provision is not binding because she did not sign it. Therefore, Lovelace does not convince the Court that the arbitration provision here is binding.

Thus, the Court is unpersuaded by PNC's arguments. Rather, the Court agrees with Sullivan that she never assented to the agreement to arbitrate. "[S]tate law governs the formation and interpretation of arbitration agreements." Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc., 376 F. Supp. 3d 1298, 1304 (S.D. Fla. 2019). The finance agreement here is governed by Florida contract law. (Doc. # 1-2 at 20). Because arbitration is a matter of contract, "[a] party cannot be required to arbitrate a dispute it did not agree to submit to arbitration." Wash. v. Mac Acquisition of Del., LLC, No. 6:14-cv-1424-Orl-40TBS, 2014 WL 5173504, at *2 (M.D. Fla. Oct. 14, 2014).

In deciding whether the parties agreed to arbitrate, the Court applies state law governing the formation of contracts but also takes into consideration the federal policy favoring arbitration. Caley, 428 F.3d at 1368. Under Florida law, if a contract is unambiguous, the actual language used in the contract is the best evidence of the intent of the parties. Rey v. Guy Gannett Publ'g Co., 766 F. Supp. 1142, 1146 (S.D. Fla. 1991). And a contract requires mutual assent. Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989).

Here, the agreement to arbitrate provision is clear and unambiguous. That provision, by its express terms, required

7

a signature to constitute assent to arbitration. (Doc. # 1-2 at 21). And Sullivan never signed the provision. (Id.). Therefore, there was no mutual assent to this provision.

Additionally, "when interpreting contractual provisions, courts 'will not interpret a contract in such a way as to render provisions meaningless where there is a reasonable interpretation that does not do so.'" Moore v. State Farm Mut. Auto. Ins. Co., 916 So. 2d 871, 877 (Fla. 2d DCA 2005)(finding that if the court accepted State Farm's argument about one provision, another provision would be made completely meaningless). Instead, courts must interpret a contract in a way that gives meaning to all of its provisions. Fla. Polk Cty. v. Prison Health Servs., Inc., 170 F.3d 1081, 1084 (11th Cir. 1999); Publix Super Mkts., Inc. v. Wilder Corp. of Del., 876 So. 3d 652, 654 (Fla. 2d DCA 2004).

Thus, the statement at the bottom of the finance agreement that "[y]ou agree to the terms of this contract" and "acknowledge that you have read both sides of this contract, including the arbitration provision" does not alter the Court's analysis. (Doc. # 1-2 at 21). If the Court accepted PNC's argument that Sullivan's signature at the bottom of the agreement qualified as assent to the arbitration provision, then the agreement to arbitrate provision and its

additional signature line would be rendered meaningless. The Court declines to read the contract this way.

Because Sullivan never agreed to the arbitration provision, Sullivan cannot be compelled to arbitrate. Therefore, PNC's Motion is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant PNC Banks's Motion to Compel Arbitration and Stay Claims Pending Arbitration (Doc. # 19) is **DENIED.** PNC's and Absolute Recovery's Answers are due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of October, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE